UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
-----------------------------------------------------------------X
BRUCE FEINGERTS,

                   Plaintiff,                  **MEMORANDUM & ORDER**

       -against-                        **15-CV-2895 (NGG) (JCW)**

SANDRA MILLS FEINGERTS,

                   Defendant.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Bruce Feingerts brings this pro se action[1] against Defendant Sandra Mills Feingerts, alleging breach of fiduciary duty and seeking, inter alia, the disgorgement of retirement funds, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Compl. (Dkt. 1).) Before the court is Plaintiff's motion to disqualify defense counsel for conflict of interest (Mot. to Disqualify Counsel (Dkt. 24)), and Defendant's motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Mot. to Dismiss (Dkt. 7); Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") (Dkt. 7-1)). For the following reasons, the court DENIES Plaintiff's motion to disqualify defense counsel and GRANTS Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1).

## I. BACKGROUND

### A. Factual Allegations

The following facts are taken from the Complaint and are assumed to be true for the purpose of Defendant's motion to dismiss. Plaintiff and Defendant both are attorneys and

---

[1] As explained infra Part I.B, Plaintiff was represented by counsel when he filed both the Complaint and his opposition to Defendant's motion to dismiss.

residents of New Orleans, Louisiana, and they were married from 1980 until 1993. (Compl. ¶ 3.) Plaintiff alleges that during their marriage, Defendant invested all of the couple's combined retirement funds in an ERISA benefit plan provided by Defendant's employer at the time. (Id. ¶ 5.) According to Plaintiff, he relied on Defendant's expertise as an attorney specializing in ERISA law, and he entrusted her to invest their retirement funds and manage the benefit plan "in their mutual best interests." (Id.) Plaintiff maintains that after their divorce, Defendant transferred funds from the ERISA benefit plan into individual retirement accounts ("IRAs") held in Defendant's name only, which Plaintiff believes to be worth over $1,500,000. (Id. ¶¶ 1, 2, 6, 25.) Plaintiff further alleges that Defendant previously agreed to return Plaintiff's share of the funds in consideration for a $3,000 check from Plaintiff to be held in trust until after the transfer (id. ¶ 22), but that Defendant cashed this check without completing the transfer as agreed (id. ¶ 23).

Plaintiff seeks a determination that Defendant breached her fiduciary duties under ERISA and her ethical duties as an attorney by converting the benefit plan funds without Plaintiff's knowledge or consent. (Id. ¶ 50.) Plaintiff also seeks the disgorgement by Defendant of one half of all joint contributions to the plan, the increase in market value of the investments, all interest and dividends earned by the funds, attorneys' fees and penalties, and damages for emotional suffering and inconvenience due to Plaintiff's inability to access his retirement funds. (Id.)

### B. Procedural History

On July 23, 2015, Plaintiff—then represented by counsel—filed t Complaint against Defendant in the U.S. District Court for the Eastern District of Louisiana, asserting federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (See id.) On September 21, 2015, Defendant filed a motion to dismiss the Complaint for lack of subject matter jurisdiction,

pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). (Mot. to Dismiss.) Plaintiff has responded in opposition (Pl.'s Resp. (Dkt. 9)), and Defendant has replied (Def.'s Reply (Dkt. 15)).

On November 16, 2015, Attorneys Sidney L. Shushan and Jonathan M. Shushan—Plaintiff's counsel at the time—filed an ex parte motion to withdraw as Plaintiff's counsel, citing a pending disciplinary complaint filed by Plaintiff against Sidney Shushan, as well as an ongoing dispute over Plaintiff's allegedly unpaid legal bills. (See Deficient Ex Parte Mot. to Withdraw (Dkt. 12).) However, the Clerk of Court marked the motion-to-withdraw as deficient, because it did not indicate that Plaintiff had been informed of all deadlines and pending court appearances. (Nov. 17, 2015, Not. of Deficient Doc.) On December 16, 2015, the undersigned was designated and assigned to this case by the Chief Justice of the United States. (Order for Designation and Assignment (Dkt. 13).) On December 30, 2015, the court ordered Sidney and Jonathan Shushan, Plaintiff, and any replacement counsel for Plaintiff to attend oral argument on Defendant's motion to dismiss, scheduled for January 13, 2016. (Order (Dkt. 16).)

On January 13, 2016, the court held a conference with all parties present, at which time Plaintiff represented that he did not wish to continue to be represented by Sidney and Jonathan Shushan. (Min. Entry (Dkt. 19).) However, Plaintiff did not consent to the Shushans' withdrawal, because he maintained that they had not returned all of his files relating to this action. (See id.) Sidney and Jonathan Shushan both represented to the court that they no longer possessed any files or paperwork related to this action, and the court therefore ordered them to re-file their motion to withdraw that same day. (Id.) The court decided to forgo oral argument on Defendant's motion to dismiss in order to give Plaintiff time to secure replacement counsel. (Id.) Accordingly, the court ordered Plaintiff to advise the court no later than February 29, 2016,

either through new counsel or pro se, the status of his representation. (Id.) In the event that Plaintiff was able to secure counsel, the court ordered such counsel to indicate whether he or she intended to oppose Defendant's motion. (Id.) In the event Plaintiff appeared pro se, the court ordered him to file his supplemental opposition, if any, to Defendant's motion no later than March 14, 2016, at which point the court would consider the motion fully briefed. (Id.)

Later on January 13, 2016, Sidney and Jonathan Shushan filed a second motion to withdraw as Plaintiff's counsel of record (Second Mot. to Withdraw (Dkt. 18)), which the court granted (Order Granting Mot. to Withdraw (Dkt. 20)). On February 29, 2016, Plaintiff filed a pro se motion for an extension of time to (1) secure counsel, (2) respond to Defendant's motion to dismiss, and (3) move to disqualify Defendant's counsel. (Mot. for Additional Time (Dkt. 21).) Plaintiff maintained that he had been unable to secure counsel due to: (1) "a series of significant health setbacks over the past few months" (id. at 2), and (2) an ongoing ethics dispute with Sidney Shushan, in which Plaintiff claimed that Mr. Shushan "absconded with over $115,000 of advanced legal fees and costs" (id. at 3). The court denied Plaintiff's motion for additional time, noting that Plaintiff's dispute with Mr. Shushan no longer was at issue in this case, and that Plaintiff had had ample time to pursue his action and still had until March 14, 2016, to secure counsel and file further submissions. (Order Denying Mot. for Extension (Dkt. 23) at 2.) Finally, the court held that if Plaintiff was able to secure counsel by March 14, 2016, such counsel would be permitted to move for an extension of time; otherwise, the court declared its intention to rule on Defendant's motion on the basis of all filings submitted by that date. (Id.)

On March 14, 2016, Plaintiff filed a pro se motion to disqualify defense counsel for conflict of interest, for a hearing on his motion, and for an extension of time to respond to

4

Defendant's motion to dismiss. (Mot. to Disqualify Counsel at 8.) The court reserved on Plaintiff's request for a hearing and granted Plaintiff an extension of time until April 1, 2016, to respond to Defendant's motion; however, the court warned that no further extensions would be considered. (Id.) Defendant then filed a response in opposition to Plaintiff's motion to disqualify defense counsel. (Def.'s Opp'n (Dkt. 26).)

On April 1, 2016, Plaintiff filed yet another motion for an extension of time to respond to Defendant's motion to dismiss. (Mot. for Extension (Dkt. 27).) In his motion, Plaintiff requested that the court issue an order directing Stanley Shushan to return any of Plaintiff's files still in Mr. Shushan's possession. (Id. at 5.) Plaintiff also requested a status conference before the court to "discuss confidential mat[t]ers." (Id. at 8.) The court denied Plaintiff's motion in full, noting that Plaintiff had "made multiple submissions to the court, with numerous exhibits, explaining his ethical and financial disputes with Mr. Shushan, his medical conditions, and his pending motion to disqualify Defendant's counsel," but that Plaintiff had consistently failed to respond to Defendant's motion to dismiss. (Order Denying Mot. for Extension (Dkt. 29) at 2.) The court indicated that it would decide the pending motions on the basis of all materials submitted thus far, and that it would not consider any further submissions. (Id.)

## II. PLAINTIFF'S MOTION TO DISQUALIFY

Plaintiff moves to disqualify Attorney Kyle Schonekas and his law firm of Schonekas, Evans, McGoey & McEachin, LLC, as counsel for Defendant, based on allegations of a conflict of interest. (Mot. to Disqualify Counsel at 3.) Plaintiff alleges that sometime after 2001, he met with Mr. Schonekas "for over an hour to seek legal representation of Plaintiff in this very same dispute between Plaintiff and his ex-wife Defendant . . . relating to her illegal conversion of their community property ERISA [ ] funds[.]" (Id.) Plaintiff maintains that during this meeting, he

5

"produced and discussed sensitive privileged and confidential information and documents in order for Mr. Schonekas to determine the correct amount of his requested advanced legal retainer fee," and that Mr. Schonekas's subsequent representation of Defendant in this matter has "greatly prejudiced" Plaintiff. (Id.) As explained below, the court finds Plaintiff's motion to be unsupported.

### A. Standard of Review

The Fifth Circuit has held that "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." In re Am. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992). "When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" In re ProEducation Int'l, Inc., 587 F.3d 296, 299 (5th Cir. 2009) (quoting FDIC v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995)). Nonetheless, "[a]lthough federal courts may adopt state or ABA rules as their ethical standards, whether and how these rules apply are questions of federal law." Parker v. Rowan Cos., No. 03-CV-0545, 2003 WL 22852218, at *2 (E.D. La. Nov. 25, 2003).

The U.S. District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association. E.D. La. Local R. 83.2.3. In addition to the Louisiana rules, the court considers the American Bar Association's ("ABA") Model Rules of Professional Conduct. See Parker, 2003 WL 22852218, at *2 (citing Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 266 (5th Cir. 2001); FDIC, 50 F.3d at 1311-12). In addition to these professional standards, the court must consider the public interest and the litigants' rights. Id. at *3 (citing In re Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992)).

Because Plaintiff never was represented by Mr. Schonekas, the relevant Louisiana rule is Rule 1.18, Duties to Prospective Clients. Rule 1.18 states in relevant part:

> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter[.]

La. R. Prof'l Conduct 1.18. This rule is largely identical to the ABA's Model Rule 1.18. See Model R. Prof'l Conduct 1.18.

Where a party moves to disqualify opposing counsel based on an alleged conflict of interest, the moving party bears the burden of proving the grounds for disqualification. Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 646 F.2d 1020, 1028 (5th Cir. 1981). Furthermore, in deciding such a motion, the district court must engage in a fact-specific inquiry. See id. at 1029 ("In a disqualification case, the focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations."); see also Church of Scientology v. McLean, 615 F.2d 691, 693 (5th Cir. 1980) ("The rule of disqualification is not mechanically applied in this Circuit."); Brennan's Inc. v. Brennan's Rests., Inc., 590 F.2d 168, 173-74 (5th Cir. 1979) ("'When dealing with ethical principles, . . . we cannot paint with broad strokes. The lines are fine and must be so marked[,] . . . and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.'" (quoting Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977))).

**B.      Discussion**

Plaintiff has failed to meet his burden of proving a conflict of interest on the part of defense counsel. Although Plaintiff has submitted a nine-page motion, in addition to a five-page affidavit and several letters and emails to Mr. Schonekas, his allegations amount to nothing more than conclusory statements that he "shared significantly sensitive privileged and confidential information" with Mr. Schonekas. (Mot. to Disqualify Counsel at 3.) At no point has Plaintiff specified what information was shared, or how such information could be "significantly harmful" to him in this matter. La. R. Prof'l Conduct 1.18(b).

For his part, Mr. Schonekas has submitted a sworn declaration describing his memory of the meeting between himself and Plaintiff. (Decl. of Kyle Schonekas ("Schonekas Decl.") (Def.'s Opp'n, Ex. C (Dkt. 26-3)).) According to Mr. Schonekas, the meeting occurred several years ago at a restaurant, not at Mr. Schonekas's office as Plaintiff alleges. (Id. ¶ 2.) Although Mr. Schonekas does not recall the precise subject matter of the meeting, he maintains that Plaintiff expressed an interest in retaining Mr. Schonekas on an unrelated matter. (Id. ¶¶ 3-5.) Mr. Schonekas has sworn that Plaintiff did not mention his intent to file suit against Defendant and did not divulge any potentially harmful information during that meeting. (Id. ¶¶ 5-6.) In fact, Mr. Schonekas maintains that if Plaintiff were to have indicated at that time that he intended to sue Defendant, Mr. Schonekas "would have declined the representation, without allowing Mr. Feingerts to divulge confidential information, because [he] was personally acquainted with [Defendant]." (Id. ¶ 5.)

In addition, Defendant has provided a sworn declaration from Mr. Dane Ciolino, who was also present at the meeting between Plaintiff and Mr. Schonekas. (Decl. of Dane S. Ciolino ("Ciolino Decl.") (Def.'s Opp'n, Ex. D (Dkt. 26-4)).) Mr. Ciolino is a professor of legal ethics,

8

with a law practice specializing in legal ethics. (Id. ¶¶ 1-2.) He also has served as reporter to the Louisiana State Bar Association Ethics 2000 Committee and chairperson of the U.S. District Court for the Eastern District of Louisiana's Lawyer Disciplinary Committee. (Id. ¶ 3.) Mr. Ciolino corroborates Mr. Schonekas's recollection of the meeting, and he too has sworn that Plaintiff did not disclose any potentially harmful information. (See id. ¶¶ 5-6.)

The weight of the evidence before the court strongly indicates that Mr. Schonekas does not have a conflict of interest with Plaintiff. Both Mr. Schonekas and Mr. Ciolino have submitted sworn statements that the meeting with Plaintiff—which occurred several years ago—did not concern his instant dispute with Defendant and that no harmful information was disclosed. Plaintiff's affidavit, in contrast, makes a general claim that he provided confidential information in anticipation of this action against Defendant and that he therefore is placed "at a significant disadvantage." (Aff. of Bruce L. Feingerts ("Feingerts Aff.") (Mot. to Disqualify Counsel, Attach. 2 (Dkt. 24-2)) ¶ 7.) This is an insufficient basis on which to deprive Defendant of her choice of counsel. See Duncan, 646 F.2d at 1029 (emphasizing that a court should order disqualification of counsel "[o]nly when the moving party delineates with specificity" the basis for the conflict). Furthermore, the court frankly doubts Plaintiff's credibility. Given Plaintiff's multiple requests for extensions of time in this case and multiple excuses for his inability timely to prosecute his case, the court suspects that the motion to disqualify is yet another attempt to delay the court's decision on Defendant's motion to dismiss. Accordingly, the court denies Plaintiff's motion to disqualify defense counsel.

9

## III. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

#### 1. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court "must dismiss a case for lack of subject matter jurisdiction 'when the court lacks the statutory or constitutional power to adjudicate a case.'" Jones v. Queen City Corp., et al., No. 15-CV-6683, 2016 WL 1572077, at *3 (E.D. La. Apr. 19, 2016) (quoting Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)). Subject matter jurisdiction may be determined on the basis of "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming, 281 F.3d at 161. The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. Id. Finally, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule (12)(b)(1) jurisdictional attack before addressing any attack on the merits." Id. (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

#### 2. Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

10

Id. The court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted). "If there are insufficient factual allegations to raise a right to relief above a speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed." Hickerson v. United States, No. 10-CV-102 (SSV), 2010 WL 2854282, at *1 (E.D. La. July 19, 2010) (citing Twombly, 550 U.S. at 555; Jones v. Bock, 549 U.S. 199, 215 (2007); Carbe v. Lappin, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007)).[2]

### B. Discussion

#### 1. Appropriate Standard of Review

Defendant makes three arguments for dismissal of the Complaint. First, she argues that dismissal is required under Rule 12(b)(1), for lack of subject matter jurisdiction, because ERISA does not cover IRAs and therefore cannot provide a basis for Plaintiff to access the disputed funds. (Def.'s Mem. at 5-6.) Second, Defendant argues that Plaintiff lacks standing to bring a claim under ERISA. (Id. at 6-8.) However, Defendant does not indicate whether ERISA standing is governed by Rule 12(b)(1) or Rule 12(b)(6). Third, Defendant argues that any possible claims of Plaintiff's are time-barred by ERISA's six-year statute of limitations, although she does not indicate whether this argument is made pursuant to Rule 12(b)(1) or Rule 12(b)(6).

---

[2] "Courts construe briefs submitted by pro se litigants liberally, and a court will 'apply less stringent standards to parties proceeding pro se than to parties represented by counsel.'" Hickerson, 2010 WL 2854282, at *1 (quoting Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam)). In this case, however, the court need not grant Plaintiff this treatment, as Plaintiff's Complaint and Response both were submitted by counsel. (See Compl.; Pl.'s Resp.; supra Part I.B.)

11

(See id. at 8.) Accordingly, the court must begin its discussion by determining which procedural mechanism should be applied to each of Defendant's proffered grounds for dismissal.

First, the court finds that the question of whether ERISA applies to the disputed funds is not—as Defendant maintains—an issue of subject matter jurisdiction, but instead goes to whether Plaintiff has stated a valid claim for relief under ERISA. "[T]his distinction rarely has practical consequences, because the standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003) (Sotomayor, J.). However, "[t]he Supreme Court has repeatedly instructed that we must avoid conflating the question of whether we have subject matter jurisdiction to consider a claim with the determination of whether the plaintiff has stated a valid claim for relief." Smith v. Reg'l Transit Auth., 756 F.3d 340, 344 (5th Cir. 2014) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 510-11 (2006)); see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 249 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action."); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) ("[I]f the plaintiff really makes a substantial claim under an act of Congress, there is jurisdiction whether the claim ultimately be held good or bad.").

Where a federal statute is asserted as the basis of subject matter jurisdiction, the standard for determining whether the statute's coverage is "an element of a plaintiff's claim for relief or a jurisdictional requirement. . . . turns on whether Congress has specifically designated a statutory limitation on coverage as jurisdictional." Smith, 756 F.3d at 344 (citing Arbaugh, 546 U.S. at 516). In Smith, the district court granted the defendants' motion to dismiss an ERISA claim for lack of subject matter jurisdiction, on the ground that the plan in question was a government

12

plan exempt from coverage under the statute. Id. at 342. The Fifth Circuit remanded, observing that ERISA's government plan exemption was not listed in the statute's jurisdictional provision. Id. at 345 (citing 29 U.S.C. § 1132(e)). The court therefore held that "unless the Plaintiffs' claim is so insubstantial or implausible as not to involve a federal controversy, [their] pleading triggers federal jurisdiction." Id. (internal quotation marks, alterations, and citation omitted); see also Holland v. DA Tencil, Inc., No. 14-CV-86 (GC), 2014 WL 3588520, at *2 (S.D. Tex. July 21, 2014) (citing Smith in the context of the Fair Labor Standards Act).

Defendant's first ground for dismissal is based on an ERISA coverage limitation—namely, that the statute does not apply to IRAs. (See Def.'s Mem. at 5 (citing 29 U.S.C. § 1003(a); 29 C.F.R. § 2510.3-2(d)(1)).) However, as in Smith, this coverage limitation is not included in ERISA's jurisdictional provision. See 29 U.S.C. § 1132(e). Therefore, the court finds that Defendant's coverage-limitation argument is properly considered under Rule 12(b)(6).

Conversely, Congress has clearly identified ERISA standing as a jurisdictional limitation on coverage. See id. (declaring that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary"). Accordingly, Defendant's argument that Plaintiff lacks standing to bring suit under ERISA is properly considered as a jurisdictional attack under Rule 12(b)(1). See, e.g., Piro v. Nextstar Broad., Inc., No. 11-CV-2049 (KLH), 2012 WL 2089596, at *3 (W.D. La. Apr. 10, 2012) ("To the extent Plaintiff lacks standing to bring suit under ERISA, his claim for benefits under the plan should be dismissed for lack of subject matter jurisdiction."); Cobb v. Cent. States, 461 F.3d 632, 635 (5th Cir. 2006) ("[S]tanding to bring an action founded on ERISA is a jurisdictional matter." (internal quotation marks and citation omitted)).

13

Finally, Defendant's statute-of-limitations argument is governed by Rule 12(b)(6). "[P]rescription is a proper reason for granting a Rule 12(b)(6) motion to dismiss[.]" Snow v. Cracker Barrel Old Country Store, Inc., No. 15-CV-02375 (KDE), 2015 WL 5276772, at *2 (E.D. La. Sept. 8, 2015); see also Tigert v. Am. Airlines Inc., 390 F. App'x 357, 358 (5th Cir. 2010) (affirming dismissal of time-barred claim under 12(b)(6)). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evidenced from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

2. Lack of Standing Under ERISA

Having determined that Defendant's standing argument is a jurisdictional attack on Plaintiff's claims, the court must address this argument first, before considering Defendant's other, merits-based arguments. See Ramming, 281 F.3d at 161.

A plaintiff has standing to bring a claim under ERISA if he is a plan participant, beneficiary, or fiduciary. Caples v. U.S. Foodservice, Inc., 444 F. App'x 49, 52 (5th Cir. 2011) (citing 29 U.S.C. § 1132(a)); Cobb, 461 F.3d at 634; Coleman v. Champion Int'l Corp., 992 F.2d 530, 533 (5th Cir. 1993). A "participant" under ERISA is an "employee or former employee" of an employer offering an employee benefit plan. 29 U.S.C. § 1002(7). A "fiduciary" is someone who (1) exercises "discretionary authority . . . respecting management of such plan or . . . disposition of its assets," (2) "renders investment advice for . . . compensation . . . with respect to any moneys or other property of such plan," or (3) "has any discretionary authority or . . . responsibility in the administration of such plan." Id. § 1002(21)(A). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. § 1002(8). In order to

qualify as a beneficiary, an individual must have "a reasonable or colorable claim to benefits." Crawford v. Roane, 53 F.3d 750, 754 (6th Cir. 1995); see also Cobb, 461 F.3d at 635-36 (holding that to have standing as a beneficiary under ERISA, a plaintiff must show both that he or she was designated as such by the participant or terms of the plan, and that he or she has a colorable entitlement to benefits under the plan).

Plaintiff does not allege that he ever was employed by Defendant's former employer that provided the ERISA-qualified benefit plan. Therefore, he does not qualify as a participant under ERISA. Likewise, he does not allege that he is or was a plan fiduciary. Plaintiff refers to himself as a "beneficiary" of the former retirement plans (Compl. ¶ 10), but he has not alleged that he was designated as such either by a participant or by the terms of the plan. In fact, Plaintiff concedes that he "does not yet know whether he was a beneficiary under the language of the Plan," but he argues that "for all we know at this time," he might have been. (Pl.'s Resp. at 11-12.) However, the mere suggestion that Plaintiff might qualify as a beneficiary falls far short of the factual allegations necessary to establish standing under ERISA. See Cobb, 461 F.3d at 636 ("[T]his court has continued to adhere to a literal construction of the three classes of plaintiffs with standing, and we have refused to read the designation requirement out of the statutory definition: A beneficiary must prove both a colorable claim . . . and a designation by the participant or the terms of the plan[.]" (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989))); see also Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996) ("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."); Ramming, 281 F.3d at 161 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." (citing McDaniel v. United States, 899

15

F. Supp. 305, 307 (E.D. Tex. 1995); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980))).

Because Plaintiff has failed even to allege that he was a designated beneficiary of the ERISA benefit plan, the court lacks jurisdiction over his claims. See Lerra v. Monsanto Co., 521 F. Supp. 1257, 1263 (D. Mass. 1981) ("[T]he complaint makes no allegation that Mrs. Lerra fits the definition of beneficiary [under ERISA], so this court has no jurisdiction to hear the claim."). Furthermore, even if Plaintiff could show that he at one time was designated a beneficiary by the terms of the plan, he cannot show that he has a colorable entitlement to benefits under the plan because the plan no longer contains the funds at issue. See Joseph v. New Orleans Elec. Pension & Ret. Plan, 754 F.2d 628, 630 (5th Cir. 1985) (holding that retiree plaintiffs who had already received a lump sum payment from the benefit plan lacked "participant" standing under ERISA because the plan no longer had any obligation to them). Accordingly, the court must dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

Because the court lacks subject matter jurisdiction, the court need not—and should not—address Defendant's remaining asserted grounds for dismissal under Rule 12(b)(6). See Kervin v. City of New Orleans, No. 06-CV-3231, 2006 WL 2849861, at *2 (E.D. La. Sept. 28, 2006) ("In a case where multiple grounds for dismissal apply, 'the court should dismiss only on the jurisdictional ground under Fed. R. Civ. P. 12(b)(1), without reaching the question of failure to state a claim under Fed. R. Civ. P. 12(b)(6).'" (quoting Hitt, 561 F.2d at 608)).

## IV.  CONCLUSION

For the reasons outlined above, the court DENIES Plaintiff's motion to disqualify defense counsel. In addition, because Plaintiff has failed to demonstrate his standing as a beneficiary under ERISA, the court GRANTS Defendant's motion and DISMISSES the

Complaint WITHOUT PREJUDICE for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). See Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc., 544 F. App'x 455, 456 (5th Cir. 2013) ("[T]o dismiss with prejudice under Rule 12(b)(1) is to disclaim jurisdiction and then exercise it. Our precedent does not sanction the practice[.]" (internal citations omitted)).

SO ORDERED.

Dated: Brooklyn, New York
May 10, 2016

/s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge